UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 04-10258NG

| | |
|---|---|
| ARTHUR PERNOKAS AND | ) |
| DIANNE PERNOKAS, | ) |
|   Plaintiffs | ) |
| | ) |
| VS. | ) |
| | ) |
| BARRIE PASTER, M.D., | ) |
|   Defendant | ) |

## EXPERT REPORT OF MARCIA J. BROWNE, M.D.
## PURSUANT TO FED. R. CIV. P. 26 (a) (2) (B)

1.    My Name is Marcia J. Browne, M.D. I am a licensed physician in the Commonwealth of Massachusetts, certified by the American Board of Medical Oncology and the American Board of Internal Medicine. I have a private practice of oncology in Wellesley and Natick. A true copy of my curriculum vitae is attached and incorporated by reference as Exhibit A. A list of all of my publications within the preceding ten years is attached to my CV. My rate of compensation for my study and testimony in this case is $ 500/hour. I have not testified previously.

2.    I have been asked to render opinions regarding the effect of not diagnosing Arthur Pernokas's colon cancer until 2002, the growth, if any, of Mr. Pernokas's cancer between 1998 and 2002, the ability to appreciate the cancer at various times with colonoscopy, and the effect of not diagnosing and treating the tumor in terms of staging, metastasis, prognosis and chance of survival.

3.    In preparation for these opinions I have reviewed numerous documents from the litigation of *Pernokas v. Paster*, specifically:

    a.    Arthur Pernokas's Anwers to Interrogatories;
    b.    Dianne Pernokas's Anwers to Interrogatories ;
    c.    Baster Paster, MD's Answers to Interrogatories;
    d.    Deposition of Arthur Pernokas;
    e.    Deposition of Dianne Pernokas;
    f.    Deposition of Barrie Paster, MD and
    g.    Affidavit of Arthur Pernokas

4.    I have also reviewed medical records of Mr. Pernokas from various providers:
    a.    Greenleaf Medical Associates and Barrie Paster, MD (the defendant);
    b.    Stephen Chastain, MD (his current PCP);

    c.      Anna Jacques Hosp;

    d.      Caritas Holy Family Hosp; and

    e.      Putnam Breed, MD

5.      I understand the pertinent facts to be as follows:

    a.      On September 11, 1998 Arthur Pernokas reported to his doctor, Barrie Paster, MD, bright red rectal bleeding which had been ongoing for a week or two with some episodes of bleeding in the past;

    b.      Dr. Paster performed an anoscopy and found an internal hemorrhoid, then conducted a sigmoidoscopy on October 14, 1998. The sigmoidoscopy seemed to confirm a hemorrhoid;

    c.      On December 8, 1999 Mr. Pernokas complained of feeling bloated with gas and pain;

    d.      On January 6, 2000 the patient complained of further abdominal pain in a phone call to the doctor's office;

    e.      The symptoms progressed and at an office visit on June 8, 2001 it was noted that Mr. Pernokas had lost over 16 pounds;

    e.      On March 14, 2002, he returned to the doctor's office where he was examined by the physician's assistant who noted Mr. Pernokas had cramping for years, now "in waves" with recent rectal bleeding. He was sent for a STAT CBC and to a surgeon, Dr. Breed;

    f.      Dr. Breed saw the patient the same day and ordered a CT scan;

    g.      The CBC showed severe anemia (so anemic, in fact, that he needed to be transfused at the time of diagnosis) and the scan revealed a large mass in the ascending colon (right colon), with extension into the mesenteric fat and into lymph nodes;

    h.      Surgery followed: Dr. Breed removed the right colon to the hepatic flexure, including a segment of distal ileum. He performed an ileal-to-hepatic flexure anastomosis.

    i.      The pathologist described adenocarcinoma which was invasive and moderately differentiated, extending through the bowel wall into the surrounding fat and into three out of the 14 lymph nodes removed;

    j.      The large tumor, 10.5 x 5 cm, was staged pathologically as Stage III;

k.  Mr. Pernokas underwent substantial chemotherapy after his surgery.

6.  I believe, with a reasonable degree of medical certainty in the field of oncology, that,
    more likely than not:

a.  The bleeding which Dr. Paster identified in 1998 was likely coming from a pre-
    cancerous polyp or an early stage cancer in the right colon which was not
    investigated at the time;

b.  The mass ultimately removed in 2002 was a particularly large tumor of moderate
    growth rate and would be expected to be in its earliest stages even before 1998
    when it became symptomatic;

c.  The tumor would almost certainly have been visualized by a colonoscopy at least
    early as 1998 when it was probably a precancerous polyp or an early stage colon
    cancer, after which it became larger, more dangerous, and more difficult to treat;

d.  A sigmoidoscope is only approximately 60 centimeters, and the doctor is able to
    visualize less than half of the actual colon;

e.  A colonoscope enables the doctor to see the entire colon and, if polyps are
    discovered, allows the doctor to actually remove them in the process;

f.  Any tissues taken from a colonoscopy would be biopsied;

g.  A biopsy in this case would have revealed a precancerous polyp, which would
    have been excised without requiring a colectomy or an early stage
    adenocarcinoma which would have led to surgery but probably not chemotherapy;

h.  Had the cancer been detected while it was still an early stage cancer, Mr.
    Pernokas likely would have had less extensive surgery and probably not required
    chemotherapy;

i.  The longer Mr. Pernokas's cancer went undiagnosed, the larger it became,
    the more likely it was to metastasize, the more treatment was needed and the
    poorer his prognosis became;

j.  The 5-year survival rate for patients with Stage I colon cancer is 93% and with
    Stage II is 72-85%. Patients with Stage I and the majority of patients with Stage
    II do not require chemotherapy. The survival of patients with

Stage III is 40% - 60% without chemotherapy and 65% after chemotherapy.

7.    These opinions are based upon my review of the items described above, as well as on my education, training, research and clinical experience as a practicing oncologist.

Signed under the pains and penalties of perjury this 11 day of March, 2006.

*Marcia J. Browne MD*

Marcia J. Browne, MD