UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 04-10258NG

| | | |
|---|---|---|
| ARTHUR PERNOKAS AND | ) | |
| DIANNE PERNOKAS, | ) | |
| Plaintiffs | ) | MEMORANDUM IN SUPPORT OF |
| | ) | DEFENDANT'S MOTION TO |
| VS. | ) | EXCLUDE OR LIMIT TESTIMONY OF |
| | ) | PLAINTIFF'S EXPERT WITNESSES |
| BARRIE PASTER, M.D., | ) | |
| Defendant | ) | |

The Defendant, Barrie Paster, M.D., moves to exclude or limit the testimony of the

plaintiffs' expert witnesses, Richard Winickoff, M.D., and Marcia Browne, M.D. The plaintiffs'

experts were designated on March 18, 2006, but the reports of both experts did not meet the

requirements of Fed.R.Civ.P. 26(a)(2)(B). Both reports fail to state the necessary "basis and

reasons" supporting the opinions expressed, and the omission of such reasons is grounds for

excluding the expert's testimony, pursuant to Fed.R.Civ.P. 37(c)(1).

## FACTUAL BACKGROUND

The plaintiffs claim that Dr. Paster failed to timely diagnose Arthur Pernokas's colon

cancer, and that the delay in diagnosis caused Mr. Pernokas injury, specifically colectomy

surgery to remove part of his large intestine and subsequent chemotherapy. In support of their

claims, the plaintiffs have submitted expert reports from a primary care practitioner, Richard

Winickoff, M.D. (attached hereto as Exhibit "A"), concerning standard of care issues, and from

an oncologist, Marcia Browne, M.D. (attached hereto as Exhibit "B"), concerning causation

issues. The reports were submitted pursuant to the Court's order and Fed.R.Civ.P. 26(a)(2)(B),

which requires that expert reports contain, among other things, "a complete statement of all

opinions to be expressed and the basis and reasons therefor[.]"

**Richard Winickoff, M.D.**

Dr. Winickoff's report first states the medical history upon which he relies in forming his opinions. The report states that on September 11, 1998, Mr. Pernokas reported "intermittent bright red rectal bleeding" during an exam by Dr. Paster. (Exhibit "A", p. 1). Dr. Paster performed an anoscopy that revealed an internal hemorrhoid, prescribed suppositories, and scheduled Mr. Pernokas for a flexible sigmoidoscopy. (Exhibit "A", pp. 1-2). On October 14, 1998, Dr. Paster performed the sigmoidoscopy, and reported finding diverticuli, prominent vessels, small breaks in the mucosa, and an internal hemorrhoid. (Exhibit "A", p. 2). Dr. Winickoff states that no actual bleeding was seen, and that Dr. Paster indicated that the small breaks in the mucosa were the probable source of the bleeding. (Exhibit "A", p. 2).

The report next notes that on December 8, 1999, Mr. Pernokas complained of abdominal distention and bloating during an office visit to Dr. Paster. (Exhibit "A", p. 2). The report notes that Dr. Paster believed the pain was related to the use of Lopid, a cholesterol medication, and that Mr. Pernokas's medication was changed to Pravachol after he called to complain of continued pain on January 6, 2000. (Exhibit "A", p. 2). Dr. Winickoff's report next states that Mr. Pernokas was not examined by Paster again until June 8, 2001, but states that the examination was restricted and cursory despite "significant weight loss." (Exhibit "A", p. 2). The report states that Mr. Pernokas next visited Dr. Paster's office on March 14, 2002, at which time he complained of increasing abdominal pain and was found to have abdominal tenderness on examination. (Exhibit "A", p. 2). He was diagnosed with colon cancer at that time, and a colectomy was performed, followed by chemotherapy. (Exhibit "A", p. 2).

Based upon the facts stated in his report, Dr. Winickoff first expressed the opinion that Dr. Paster fell below the standard of care by failing to make a definitive diagnosis of the source

of Mr. Pernokas's bleeding in 1998. (Exhibit "A", p. 2). According to Dr. Winickoff, a colonoscopy was necessary to ascertain the source of the bleeding because "an active bleeding source" was not discovered during the flexible sigmoidoscopy. (Exhibit "A", p. 2). Dr. Winickoff further states that, had a colonoscopy been performed in 1998, a precancerous polyp or early cancer "almost certainly" would have been detected. (Exhibit "A", p. 2).

Dr. Winickoff next states the opinion that Dr. Paster should have ordered a colonoscopy in response to Mr. Pernokas's complaints of abdominal pain in December 1999 and January 2000. In his opinion, a colonoscopy at this time likely would have revealed a "stage 1 cancer." (Exhibit "A", p. 2). Finally, Dr. Winickoff states that in his opinion Dr. Paster should have taken a more thorough history and review of systems during the June 8, 2001 examination, including laboratory evaluations. (Exhibit "A", p. 3). Again, Dr. Winickoff states that "these actions also would have led to a more timely diagnosis of colon cancer . . ." (Exhibit "A", p. 3).

**Marcia Browne, M.D.**

Dr. Browne's report states essentially the same history as that in Dr. Winickoff's report, with additional information concerning the diagnosis of Mr. Pernokas's cancer and his subsequent treatment. In particular, Dr. Browne's report states that the post-operative pathology report indicated an adenocarcinoma, "invasive and moderately differentiated, extending through the bowel wall into the surrounding fat and into three out of the 14 lymph nodes removed[.]" (Exhibit "B", p. 2). The report also noted that the tumor was measured at 10.5 cm x 5 cm, and was considered "stage III." (Exhibit "B", p. 2). The report then states that Mr. Pernokas underwent "substantial chemotherapy" after surgery. (Exhibit "B", p. 3).

Dr. Browne's opinions, among others, are that (1) Mr. Pernokas's bleeding in 1998 "was likely coming from a precancerous polyp or an early stage cancer in the right colon"; (2) the

precancerous polyp or early stage cancer "would almost certainly have been visualized by a colonoscopy at least as early as 1998"; and (3) Mr. Pernokas's cancer was more likely to metastasize as it grew larger.  (Exhibit "B", p. 3).

## ARGUMENT

### THE PLAINTIFF'S EXPERTS SHOULD BE PRECLUDED FROM TESTIFYING AT TRIAL CONCERNING ANY OPINIONS NOT STATED IN THEIR REPORTS OR CONCERNING OPINIONS FOR WHICH THEY HAVE NOT PROVIDED AN APPROPRIATE FACTUAL BASIS.

Fed.R.Civ.P. 26(a)(2)(B) requires that experts retained to testify at trial disclose their opinions by submitting reports including, among other things, "a complete statement of all opinions to be expressed and the basis and reasons therefor[.]"  If a party fails to make the required disclosures without substantial justification, information not disclosed "shall not" be admitted as evidence at trial.  Fed.R.Civ.P. 37(c)(1); Sharpe v. United States, 230 F.R.D. 452, 456 (E.D.Va. 2005).

The purpose of the expert disclosure requirement in Civ.R. 26(a)(2)(B) is to ensure that parties provide complete information concerning the opinions to be expressed at trial, as prior provisions had proved inadequate to the disclosure of necessary information, and "'rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of a witness.'"  Id., at 458, quoting Advisory Committee's Notes to 1993 Amendments to Fed.R.Civ.P. 26.  The disclosure requirement was intended to require detailed and complete reports so that a party "is not forced to depose an expert in order to avoid ambush at trial[.]"  Salgado v. Gen. Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998).  The reports must be detailed and complete, and "must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions."  Id.

**<u>Dr. Winickoff's Opinions</u>**

Dr. Winickoff's first opinion, which is that the standard of care required Dr. Paster to perform a colonoscopy in 1998 because the sigmoidoscopy did not reveal an "active source" of bleeding. (Exhibit "A", p. 2). In support of this opinion, Dr. Winickoff states that although "possible sources of bleeding were identified, it could not be determined with reasonable probability that any of these were the source of the intermittent bleeding experienced by Mr. Pernokas." (Exhibit "A", p. 2). Not only does Dr. Winickoff fail to explain why Dr. Paster's findings of internal hemorrhoid and breaks in the mucosa did not reasonably explain the source of the bleeding, he fails to explain why he believes the bleeding could have come from a site in the proximal colon. Implicit in his statement that "a colonoscopy is indicated to identify lesions in the proximal colon" is an opinion that Mr. Pernokas's bleeding was in fact emanating from that area. However, not only does Dr. Winickoff fail to expressly state an opinion that the source of the bleeding was from the site where the cancer was ultimately discovered, he fails to state any "basis or reasons" for making this implicit assumption.

Dr. Winickoff's opinion concerning the duty to perform a colonoscopy in 1998 has no basis unless he also holds the opinion that the site of the cancer was the likely source of Mr. Pernokas's bleeding at that time. Unless he is willing to state this opinion, there is no basis for claiming that Dr. Paster should have suspected that the source of the bleeding was beyond the view of the sigmoidoscope, no basis for claiming that the findings on sigmoidoscopy did not reveal the probable source of the bleeding, and thus no basis for claiming that a colonoscopy was required to investigate other possible sources.

Dr. Winickoff has not opined that the site of the cancer was the source of bleeding in 1998, although, as noted, his opinion makes this implicit assumption. Even if, however, this

implicit statement of opinion is regarded as sufficient, Dr. Winickoff has failed to state the basis or reasons for holding this unstated opinion. Nothing in his report even hints at any basis for believing that the source of Mr. Pernokas's bleeding was anything other than the conditions observed during the sigmoidoscopy, or any reasons to believe that the bleeding emanated from a source that would have been detectable on colonoscopy.

Dr. Winickoff has failed to state an adequate basis for concluding that the standard of care required Dr. Paster to perform a colonoscopy, because he failed to state an opinion necessary to that conclusion; namely, that Mr. Pernokas's bleeding was probably coming from the site where the cancer was ultimately discovered. Without stating such an opinion, and without stating any basis or reasons for such an opinion, Dr. Winickoff should be excluded from testifying that Dr. Paster breached the standard of care in 1998. In the alternative, Dr. Winickoff should at least be precluded from giving any testimony as to the probable source of Mr. Pernokas's bleeding in 1998, due to his failure to express any such opinion in his report. However, as noted, precluding Dr. Winickoff from testifying as to the source of the bleeding renders any testimony concerning a breach of the standard of care insufficient, because it leaves no basis for contending that a colonoscopy was required.

Dr. Winickoff's next stated opinion concerns causation, as he states that a colonoscopy in 1998 "almost certainly" would have revealed a precancerous polyp or early cancer in the right colon. (Exhibit "A", p. 2). This statement, however, is set forth as a bare conclusion, with no explanation whatsoever. Without a statement of the basis and reasons for holding this opinion, Dr. Winickoff cannot be permitted to state such a conclusion at trial. It should also be noted that Dr. Winickoff's qualifications indicate that he is a primary care physician, and he has not established any qualifications to render an opinion as to the cancer's detectability on

colonoscopy in 1998.  However, even if Dr. Winickoff was found qualified to render such an opinion at trial, his utter failure to provide any support for the conclusion in his report requires that such testimony be excluded.

Dr. Winickoff's report next states that the examinations in December 1999 and January 2000 presented "other opportunities to complete the evaluation of the colon[.]"  (Exhibit "A", p. 2).  However, Dr. Winickoff does not state the reasons why a colonoscopy should have been performed at this time.  Dr. Winickoff does not state that Mr. Pernokas's complaints in December 1999 and January 2000 were symptomatic of colon cancer, that the complaints were independently sufficient to require a colonoscopy as the standard of care, or that the complaints in 1999 and 2000 were somehow related to the September 1998 complaints, thus requiring a colonoscopy because of the aggregate of symptoms between September 1998, December 1999, and January 2000.

Without an explanation as to the reasons why the standard of care required Dr. Paster to perform a colonoscopy in December 1999 or January 2000, any evidence or opinion to that effect is inadmissible.  Nothing is achieved by stating merely that these events presented "other opportunities" to perform a colonoscopy.  Without more, Dr. Winickoff's opinion can be read to state no more than his opinion that Dr. Paster should have ordered a colonoscopy in December 1999 based upon the complaints of September 1998, simply because he believes that a colonoscopy should have been performed at that time.  If that is the case, Dr. Winickoff's opinion concerning 1999 and 2000 stands on the same inadmissible footing as his opinion concerning 1998.

Regardless of whether Dr. Winickoff has, or could have, any viable theory concerning a claimed breach of the standard of care in 1999 and 2000, it is apparent that he has failed to

express it in his report.  Dr. Paster should not be required to guess at the theory, and Fed.R.Civ.P. 26(a)(2)(B) and 37(c)(1) act to prevent the need for such guessing.  Dr. Winickoff's failure to state the basis of his opinions with regard to the December 1999 and January 2000 complaints renders any testimony on that issue inadmissible.

With respect to causation, Dr. Winickoff's report again states that if "a colonoscopy had been performed in early 2000, a stage 1 cancer would more likely than not have been found," and that Mr. Pernokas would have suffered less injury.  (Exhibit "A", pp. 2-3).  This statement suffers from the same defects noted in his opinion concerning causation related to the treatment in 1998.  Dr. Winickoff has not explained why he believes the cancer would have been detected, how he arrived at his estimate of its likely stage, or what qualifications he holds to make such statements.  Therefore, this portion of his opinion is also inadmissible.

Dr. Winickoff next opines that Dr. Paster should have "asked appropriate questions" in response to Mr. Pernokas's weight loss during examination on June 8, 2001.  (Exhibit "A", p. 3). Dr. Winickoff also states that Dr. Paster "should have taken a more thorough history and done a review of systems" and that he should have carried out a laboratory evaluation including, at a minimum, "a CBC and other tests."  (Exhibit "A", p. 3).  Dr. Winickoff then states that if "these actions" had been taken, they would have led to a "more timely diagnosis" of colon cancer. (Exhibit "A", p. 3).

These statements not only state nothing about the basis and reasons for the opinion given, they are also so nebulous as to the opinion held that they are utterly unhelpful as disclosures of anything.  The nature of "appropriate questions," the content of a "thorough history and . . . review of systems," and the identity of "other tests" are all left to the imagination.  Significantly, this also leaves to the imagination any predicted results of the imagined questions, history, and

laboratory tests, such that it is impossible to ascertain what diagnostic information Dr. Winickoff believes was available at this time, why the standard of care required its discovery, and why Dr. Paster fell below the standard of care in failing to discover it.  Moreover, Dr. Winickoff's opinion, to the extent one is given, is premised upon his belief that Mr. Pernokas's observed weight loss in June 2001 required these further, unspecified acts of investigation and examination.  Dr. Winickoff describes the weight loss as "substantial", though his report does not state the amount of weight lost, the time period involved, or why Mr. Pernokas's weight loss required Dr. Paster to respond by asking unspecified questions or ordering unspecified laboratory tests.  Without a statement of reasons why particular questions should have been asked and particular tests taken, as well as the probable results of such testing or questioning, Dr. Winickoff's opinion is empty of substance and must be excluded.

Dr. Winickoff's statement concerning causation related to the June 2001 examination again fails the Civ.R. 26(a)(2)(B) test because he has not stated any basis for his opinion that diagnosis in June 2001 would have increased Mr. Pernokas's chance for a full recovery or less invasive treatment.  He makes no statement as to the likely stage of the cancer in June 2001, its detectability, its likely metastasis, or anything else that could be considered in determining the difference, if any, between Mr. Pernokas's prognosis in June 2001 and that in March 2002, when the cancer was diagnosed.

**Dr. Browne's Opinions**

Dr. Browne's opinions are all stated as conclusions, with no basis or reasons given.  Her first conclusion states that the bleeding identified in 1998 "was likely coming from a precancerous polyp or early stage cancer in the right colon[.]"  (Exhibit "B", p. 3).  As noted above, this opinion is not expressed in Dr. Winickoff's report, even though such an opinion is

necessary to his opinions regarding Dr. Paster's breach of the standard of care in 1998. Although Dr. Browne has expressed the opinion, there is an utter lack of any information or explanation from which one can ascertain the reasons for such a belief. Without an explanation of the reasons or basis for this opinion, the conclusion itself is inadmissible.

The lack of any statement of reasons regarding this issue is especially important because it appears that Mr. Pernokas's theory of liability is focused upon establishing that a colonoscopy was required in 1998. Dr. Paster has identified two expert witnesses, Richard Parker, M.D., and Marc Garnick, M.D., each of whom have stated the opinion that it is extremely unlikely that Mr. Pernokas's bleeding in 1998 could have emanated from the site where the cancer was discovered. Dr. Parker's report explained that the patient's complaints of bright red blood per rectum could not have had their source in the right colon unless he was bleeding so rapidly that he would have been exposed to "major blood loss, hypotension or shock." (See expert report of Richard A. Parker, M.D., attached hereto as Exhibit "C", p. 3). Dr. Garnick's report expressed the same opinion, stating that in order for a lesion in this area to result in bright red bleeding per rectum, the bleeding would have to be so brisk that the patient was "nearing exsanguination," or the lesion would have to be so large that the patient would be unmistakably symptomatic. (See expert report of Marc B. Garnick, M.D., attached hereto as Exhibit "D", p. 9).

The probable source of Mr. Pernokas's bleeding in 1998 is a critical issue in proving the plaintiffs' case, and the plaintiffs' reports are conspicuously lacking in any discussion of the issue. Dr. Browne's report states a conclusion with no basis or reasons, and Dr. Winickoff's report fails to discuss the issue altogether, despite its implicit necessity. The plaintiffs should not be allowed to present testimony on this critical issue after avoiding any useful discussion in their

expert reports. Such failures can not be seen as mistaken or in any way justified – in light of the plaintiffs' theory of the case, the critical nature of an opinion on this issue was apparent.

Dr. Browne next states the mass removed in 2002 was a tumor "of moderate growth rate," (Exhibit "B", p. 3), yet there is no explanation of what this statement means. Dr. Browne does not discuss the growth rates of tumors, the factors that might influence different growth rates, how she determined the growth rate of the tumor in question, or the significance of the conclusion. The statement concerning growth rate could be related to her subsequent conclusion that the tumor "almost certainly" would have been detectable by a colonoscopy in 1998, (Exhibit "B", p. 3), but there is no basis or reasoning expressed to show how she arrived at that conclusion. Merely stating that the tumor was of "moderate growth rate" does nothing to explain the conclusion that it was detectable in 1998, especially when there is no discussion as to the meaning of the phrase "moderate growth rate" or how that conclusion was itself reached. Dr. Garnick's expert report discusses his opinions as to the likely growth rate of the cancer, and the significance of this rate to its detectability at various times. (Exhibit "D", pp. 5-6, 10-11).

If Dr. Browne's opinion concerning detectability is based upon the first assertion, that the bleeding was emanating from the site of the tumor in 1998, then all her subsequent statements are unfounded because of the lack of any basis or reasons for making the initial statement. Whatever reasons might be given for Dr. Browne's conclusions, they have not been stated in her report, and it is unfair to require Dr. Paster to speculate as to those reasons in preparing for trial. Therefore, the failure to comply with Civ.R. 26(a)(2)(B) requires exclusion of Dr. Browne's testimony on these subjects, under Civ.R. 37(c)(1).

Dr. Browne's next opinion, that a biopsy of tissue removed after a colonoscopy in 1998 likely would have revealed cancerous or precancerous tissue (Exhibit "B", p. 3), is based upon

her assumption that suspicious tissue would have been detected and identified during a colonoscopy at that time.  As noted above, Dr. Browne has failed to explain her conclusion that such tissue was detectable and would have been identified in 1998.  Therefore, opinions that rely on that conclusion also have no basis.

Dr. Browne next states that detection of the cancer in an earlier stage would have required less extensive surgery and obviated the need for chemotherapy.  She also states that the cancer's likelihood of metastasis increased as time passed and/or as the tumor grew larger.  Again, neither of these opinions is supported by an adequate basis or reasons, and neither is sufficient with regard to any specific facts concerning Mr. Pernokas.  Again, Dr. Browne has not stated her reasons for concluding that the cancer (or precancerous polyp) was detectable in 1998.  Moreover, she has not explained the likely differences between the cancer she claims should have been detected and that ultimately discovered in 2002, other than to state, without elaboration, that earlier detection would have required less extensive surgery without chemotherapy.  Finally, she has not explained the basis for her conclusion that the likelihood of metastasis is related to the growth of the primary tumor.  Dr. Paster's expert, Marc Garnick, M.D., has stated his opinion that metastasis is not related to the growth of the primary tumor, but to the genetic and biologic characteristics of the cancer involved.  (Exhibit "D", pp. 6, 8).  The reasons for Dr. Browne's opposite conclusion are unstated, despite their critical importance to determining causation in this case.

Finally, Dr. Browne's opinions concerning general survival rates for individuals diagnosed with cancer fail to take into account any of Mr. Pernokas's actual medical history and thus state no actual opinion concerning his prognosis in this case.  (Exhibit "B", pp. 3-4).  Dr. Browne has simply cited general statistics that have no application to Mr. Pernokas's condition

without specific review of his condition.  In short, her quotation of survival rates is not a qualified opinion concerning Mr. Pernokas's prognosis, because she has not discussed, even briefly, how his condition fits within the quoted statistics.

**CONCLUSION**

For the foregoing reasons, Defendant Barrie Paster, M.D., respectfully requests that this Court exclude or limit the testimony of the plaintiffs' experts, Richard Winickoff, M.D., and Marcia Browne, M.D., due to the inadequate disclosures in their expert reports.

        /s/ Anthony R. Brighton
        Charles P. Reidy, III
        B.B.O. No. 415720
        Anthony R. Brighton
        B.B.O. No. 660193
        Attorney for Defendant, Barrie Paster, M.D.
        Martin, Magnuson, McCarthy & Kenney
        101 Merrimac Street
        Boston, MA 02114
        (617) 227-3240

**CERTIFICATE OF SERVICE**

I, Anthony R. Brighton, attorney for defendant, Barrie Paster, M.D., hereby certify that on the 18th day of May, 2006, a copy of the above document was sent by mail, postage prepaid to Robert C. Gabler, Esquire, 100 Summer Street, Suite 3232, Boston, MA  02110.

        /s/ Anthony R. Brighton
        Charles P. Reidy, III
        B.B.O. No. 415720
        Anthony R. Brighton
        B.B.O. No. 660193
        Attorney for Defendant, Barrie Paster, M.D.
        Martin, Magnuson, McCarthy & Kenney
        101 Merrimac Street
        Boston, MA 02114
        (617) 227-3240