# Individual Voir Dire

by The Hon. Raymond J. Brassard

There has been considerable discussion recently as to whether jury selection would result in a more fair jury if lawyer conducted voir dire were permitted. The purpose of this brief article is to describe a procedure for jury impanelment that results in better and more fair jury selection, with or without lawyer conducted voir dire. This procedure, or a variant of it, has been employed by Judge Brian McDonald of the Superior Court and by this writer.

The hallmark of this procedure is *individual* voir dire, of every prospective juror, in every case, criminal and civil. Individual voir dire is recommended in an article by Gregory E. Mize, a District of Columbia Superior Court Judge. [Mize, "On Better Jury Selection: Spotting UFO Jurors Before They Enter the Jury Room," 36 Court Review 10 (1999).] Judge Mize found that the "silent citizens," those members of the venire who make no response to the questions asked of the venire as a body, often have something important to say and will only do so in an individual voir dire context. Judge Mize observes that contrary to the norms of conventional impanelment, no news from the venire is not good news. During 30 criminal trials Judge Mize found that on average, 16 people in a venire panel of 59 citizens, were unresponsive to questions asked of the venire as a whole. During his individual questioning of those unresponsive jurors, he found that on average 3 of them had relevant information. This information resulted in at least one of those jurors being struck for cause in 27 of the 30 trials.

Although I have not maintained statistics as precisely as Judge Mize, it is my experience that potential jurors often disclose something of importance only in an individual voir dire. Significantly these disclosures often occur with respect to jurors who have not responded to any of the questions asked of the venire as a whole. Equally importantly, I have found that potential jurors will respond to certain questions more fully and frankly during individual voir dire. Because it is so critical to impanel a fair jury in both criminal and civil cases, I employ the following procedure in every trial.

When the case is called, I describe to the venire the importance of keeping an open mind through all of the trial proceedings, as well as the importance of judging a case based only on the evidence and the law. I then describe the case to the venire in as much detail as both counsel are able to agree upon. I ask the members of the venire a number of general and statutory questions, including matters such as whether anyone is acquainted with the parties, counsel or the witnesses; whether anyone has knowledge of this case; in a criminal case, whether anyone has difficulty accepting or understanding the presumption of evidence and the Commonwealth's burden of proof; and other general questions that members of the venire would not be reluctant to respond to in front of everyone. In order to encourage self-examination, I ask members of the venire to raise their hand if they have a yes answer to any of these questions, but I direct the court officers not to record or announce the juror number of those jurors who do raise their hand. I simply state for the record that no one has responded, or that several people have made a response to that question.

I then question individually each juror in order, beginning with panel No. 1 and going through the panels until a jury has been seated. This questioning is done at side bar with counsel, and if they wish, the parties, present. The first question to each prospective juror is whether that juror responded to any of the questions asked earlier. If so, I follow up on those responses. Then I ask the prospective juror more sensitive questions that have some direct bearing on the case at trial. For example, in a criminal case involving an alleged assault and battery by means of a dangerous weapon between members of different races, I will ask the juror whether that situation would make it difficult in any way for the juror to be fair to both the defendant and to the Commonwealth. If the case involves a sexual offense, I will ask whether the juror or anyone close to the juror has ever has been a witness to, accused of, or been a victim of, sexual assault. In a medical malpractice case, I may ask the prospective juror whether the juror or anyone close to him or her has ever considered or made a claim of medical



The Hon. Raymond J. Brassard is Justice of the Superior Court of Massachusetts.

EXHIBIT B

malpractice, or defended against one. During the individual voir dire, I also point out to the juror that the trial of the case is expected to last a certain number of days and I then inquire whether service on this jury would cause the juror to suffer a severe personal hardship. I note, parenthetically, that fewer jurors seek to be excused on this ground when the question is asked at sidebar as opposed to being asked of the venire as a group. Accordingly the representativeness of the jury is enhanced.

In determining what questions to ask at sidebar, I of course consider those questions suggested by both counsel. On occasion, a particular juror will give brief and "correct" answers to the questions posed at sidebar. When that happens, I also ask some other questions of the juror, for example, what sort of work that person pursues or something of that sort, simply in order to get the juror to talk somewhat in front of counsel. I do this because I think it is important for counsel and the parties to have the opportunity to take some measure of the juror.

When I have completed my questioning of the juror, I ask the juror to step back to a location in the courtroom that I have asked the court officer to bring the jurors to. Occasionally, counsel will then ask that I further pursue a line of questioning with the juror. After any such further questioning, I ask the parties to make any challenges for cause or peremptory challenges. When individual voir dire is conducted, Rule 6 of the Superior Court Rules permits the judge to require counsel to exercise peremptory challenges at that time. I require counsel to do this because I think it is efficient and a reasonable price to pay for the significant benefit of individual voir dire. If there are no challenges, the juror is seated and becomes one of the trial jurors.

I have given counsel the option of participating in the voir dire of the jurors. In my experience, lawyers do not accept this invitation. It may be that counsel are satisfied that individual voir dire by the court provides counsel with sufficient information about potential jurors. I find that counsel are much more inclined to suggest questions at the outset of impanelment, and to suggest particular questions for a prospective juror after I have questioned that juror and asked him or her to step back with the court officer. In the event counsel herself wishes to directly question the jurors, I ask counsel to give me a general sense of those questions at the outset of impanelment so that I may have the opportunity to consider whether they are appropriate. Similarly, if counsel wishes to pursue particular questions with a juror after my questioning of that person, I would ask counsel to clear those with me before the juror returns to sidebar.

To my surprise, I have found that I am able to impanel a jury with the individual voir dire method described in the same amount of time as more traditional methods. In part, this is because counsel exercise peremptory challenges contemporaneously.

An impanelment opening may be included with the approach I have described. Such an opening consists of a very brief opportunity to describe to the venire the case that will be tried. Such an opening may concretize the case for the venire, and make the individual voir dire that follows even more meaningful.

In summary, my experience with this method of impanelment has been excellent. The parties before the court, counsel, and our system of justice, all benefit from selection of a truly fair jury. Finally, this method may result in more equitable treatment of prospective jurors because counsel exercise fewer peremptory challenges on the basis of stereotypes.

**Boston Networking Co**

*A full service IT company specializing in:*

- Case Management Software
- Customized Databasing
- Contact Management
- User Support
- Remote Access Solutions
- High-Speed Internet

Official Support Provider to the Massachusetts Academy of Trial Attorneys and its Immediate Past President

**GET ONE YEAR FREE WEB AND MAIL HOSTING***

**GET BUSINESS CLASS DSL FOR $89 / MONTH**

**FREE ONSITE CONSULTATION**

http://www.bostonnetworking.com
617-627-9600
info@bostonnetworking.com

*Free hosting requires standard monthly maintenance contract. New customers only.